**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

SOUTHERN DIVISION

| | | |
|---|---|---|
| RICKY WAYNE WASHBURN, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PETRO WEST, INC. d.b.a. BEST | : | |
| PETROLEUM, | : | Case No. 4:18-cv-00082-DN |
| | : | |
| Defendant. | : | Hon. David Nuffer |

COMES NOW the Plaintiff, Ricky Wayne Washburn, who complains of

Defendant Petro West, Inc. d.b.a. Best Petroleum, demands trial by jury and as and for

causes of action alleges as follows:

**JURISDICTION**

1.      The District Court has jurisdiction of this case pursuant to federal

question.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964,

as amended, and the Americans with Disabilities Act of 1990, as amended, for

discrimination in employment and for retaliation.  Jurisdiction is specifically conferred

on this Court by 42 U.S.C. § 2000 e (5).  Equitable and other relief are also sought

under 42 U.S.C. § 2000 e (5) (g).  Jurisdiction is also conferred by the Americans with

Disabilities Act of 1990, as amended.  Jurisdiction is also based on 28 U.S.C. §§ 1331,

1332 and 42 U.S.C. § 1981, et. seq.

## PARTIES

2.      Ricky Wayne Washburn is a citizen of the United States and a

former resident of the State of Utah.

3.      Petro West, Inc. d.b.a. Best Petroleum ("Petro West") is an entity

which conducts operations in the State of Utah and which is an "employer" within the

meaning of Title VII, and the Americans with Disabilities Act and which was Mr.

Washburn's employer during all periods of time relevant to this action.

4.      At all times relevant to this action, the individual(s) whose actions

and inactions are complained of herein are and/or were employees or agents of Petro

West, and for all purposes herein, acted within the course and scope of their

employment with and for Petro West such that their actions and inactions are

attributable to Petro West.

## VENUE

5.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391, in

that the claims arose in the State of Utah, Petro West employed Mr. Washburn in the

2

State of Utah; all of the employment practices alleged herein were committed within the State of Utah; and the relevant employment records are believed to be maintained in the State of Utah.

6.     Mr. Washburn alleges he has exhausted all administrative procedures and remedies as to his alleged violations of the EEO laws and that the EEOC has issued him a right to sue letter.  Mr. Washburn alleges hie is filing the Complaint within the 90-day period set forth in said Right to Sue Letter.

**STATEMENT OF FACTS**

7.     At all times relevant hereto, Mr. Washburn was an employee if Petro West.

8.     A few months prior to August 11, 2017, Mr. Washburn was hired by Petro West to work on installing underground fuel tanks at truck stops and gasoline stations.

9.     On August 11, 2017, before Mr. Washburn experienced his work-related accident and sustained his work-related injuries, Mr. Washburn was qualified to perform the essential functions of the job he held or desired.  He had been performing them without any problems for Petro West.

3

10.     Mr. Washburn alleges that, <u>before</u> his work-related injury, he was able to do all of the physical functions of he job he held for eight (or more) hours a day and had been doing them successfully.

11.     On August 11, 2017, when he was working for Petro West on a job site in Cedar City, Utah, Mr. Washburn suffered a serious on-the-job injury to his back.

12.     Mr. Washburn alleges that Daxton Gubler, Colton Edwards and Van Belk witnessed his accident/injuries.

13.     After sustaining his on-the-job injury, Mr. Washburn called his supervisor, Chase Gubler, to tell him that he had been involved in a work accident and suffered an on-the-job injury.

14.     At first, Mr. Washburn thought that he had just suffered a minor injury to his back and that, in a day or two, he would be feeling better.

15.     After Mr. Washburn suffered his on-the-job injury on August 11, 2017, and as he continued to work the next day, Mr. Washburn's back condition did not improve, but got worse.  He alleges his right leg became numb and that, when he tried to walk, he would fall.

16.     Mr. Washburn alleges that, due to the progression of his work-related injury, he has developed impairments and limitations, including numbness and

4

a lack of feeling in right leg which renders it practically useless, loss of control of his

bowels, he can no longer have sexual intimacy, his life has been changed drastically.

Such injuries also require full time use of a walker or Mr. Washburn falls and he must

use pain medication.  All of the above limits Mr. Washburn's ability to work.  He

alleges his limitations are expected to last for the duration of his life.

17.     Mr. Washburn alleges the accident has caused injuries which have

developed into an impairment which substantially limits several of his major life

activities and constitutes a disability.

18.     Mr. Washburn alleges the impairment and restrictions summarized

above temporarily precluded Mr. Washburn from performing the essential functions

(normal duties) of the job he held.  He alleges they did not preclude him from

performing the essential functions of the jobs he desired, which was to work limited

duty or light duty work, which he could do so successfully, until he was able to obtain

the necessary treatment and, hopefully, return to his regular job or other job with Petro

West.

19.     Thus, Mr. Washburn alleges that, despite his limitations, he was a

qualified individual with a disability, in that he could have performed the essential

functions of jobs that he desired, that Petro West knew of or should have known of his

need for a reasonable accommodation, that he requested reasonable accommodations,

5

that Petro West denied his requests for reasonable accommodations and that Petro

West took adverse action against him because he was a person with a disability and

because he requested reasonable accommodations and because he exercised his rights

to claim workers' compensation coverage and benefits.

      20.    On Monday, August 15, 2017, Mr. Washburn alleges he told

Chase Gubler, his supervisor, and Heidi Peak, the construction coordinator, the he was

injured worse than he had originally thought and that he needed some time off because

he needed to go home to Texas (where he lived) so he could see a local doctor.  Mr.

Washburn alleges Frank Niesprasck, Petro Wests's manager, told him to go ahead and

seek medical treatment in his home area and give him his permission to use the

company credit card for any expenses related to his injuries.  However, Mr. Niesprasck

told Mr. Washburn that he was not going to report the incident to workers'

compensation.

      21.    Mr. Washburn alleges that he then, by himself, directly reported

the injury to the company's workers' compensation insurance carrier and sought to file

a workers' compensation claim.  Mr. Washburn alleges Frank Niesprasck stymied that

effort by not filing a claim with the workers' compensation insurance carrier.

22.     Thus, Mr. Washburn alleges that, when he later reported a workers' compensation injury to his employer, the employer refused to accept the injury or report the injury.

23.     Mr. Washburn alleges that he had to contact the Utah Labor Commission to personally file a claim for workers' compensation benefits, which he did, and which eventually resulted in approval of his claim.

24.     Mr. Washburn alleges that, after he contacted the workers' compensation carrier directly, and took action to pursue filing a claim for workers' compensation benefits, Petro West immediately reprimanded and constructively terminated his employment for doing so.

25.     Mr. Washburn alleges that, later, Petro West agents told him that, because he left his job, supposedly without notice or permission to do so, Petro West had considered that, as of August 15, 2017, considered Mr. Washburn had voluntarily quit his job.

26.     However, Mr. Washburn alleges that, after he reported to Chase Gubler and Heidi Peak that his injuries were worse than he had originally thought, and that he was going to need to go back home (to Texas) to get medical treatment, he was given permission to leave the premises and he was also given permission to use the company credit card to pay for any necessary expenses, medical or otherwise.  Mr.

7

Washburn alleges he did not abandon his job, did not quit, and did not do anything except that which Petro West had authorized him to do.

27.    Thereafter, Mr. Washburn sought medical treatment in Texas and tried to get better to where he could return to work for Petro West in some capacity.

28.    Mr. Washburn alleges that, on August 30, 2017, he sent an e-mail to the payroll clerk with Petro West requesting directions on how to input his time since he was not working due to an injury.  Mr. Washburn alleges he received a response from Mr. Niesprasck telling him that he had been terminated.  Thus, Mr. Washburn alleges that Petro West did not enter into a reasonable accommodation dialogue with him, did not seek to accommodate his disability, did not offer him light duty or leave, but just fired him.

29.    Mr. Washburn alleges that he, as an employee who experienced a serious work-related injury and who, while employed, became an individual with a disability, is protected under the disability protection laws.

30.    Mr. Washburn alleges that Petro West terminated Mr. Washburn's employment because (a) he had sustained a work-related injury; (b) he had become a person with a disability; (c) he had reported the injury; (d) he had filed an accident report and needed reasonable accommodations; and (e) he had inquired about workers'

compensation coverage and benefits and had indicated that he was going to file a claim

for workers' compensation benefits.

31.     Mr. Washburn also alleges that, upon terminating his employment,

the company confiscated approximately 95% of his last paycheck and has also failed or

refused to return his personal items to him which he left at the Cedar City site — which

include approximately $1,800 worth of tools.

32.     Mr. Washburn alleges Petro West's position is that such an

employee is not protected — if a work-related injury renders such employee incapable

of performing the essential functions of the job he held on a temporary or permanent

basis, then he can be fired.  It's a nineteenth century "if you get hurt, you lose your

job" view of the law.

33.     Mr. Washburn alleges the applicable laws work differently.  The

disability protection laws do require an employer to provide reasonable

accommodations to an employee with a disability, if, by implementing such

accommodations, an employee could perform the essential functions of the positions

such employee held or desired.

34.     Mr. Washburn is alleging that the disability protection laws

require Petro West to afford him a reasonable accommodation in the job he held or

desired and that, if, by accommodating him, he could perform the essential functions of the job he desired, he would be a "qualified" individual with a disability.

35.     The disability protection laws <u>do</u> require Petro West to accommodate employees with disabilities unless Petro West can demonstrate that to do so would create an undue hardship.  *See, generally,* the undersigned's case of *Woodman v. Runyon,* 132 F.3d 1330 (10th Cir. 1997), and the 10th Circuit's *en banc* decision in *Smith v. Midland Brake,* 180 F.3d 1154 (10th Cir. 1999), and the 10th Circuit's decision in *Davidson v. American Online, Inc.,* 337 F.3d 1179 (10th Cir. 2003).

36.     The disability protection laws do not "care" about the cause of a disability — whether an employee's impairment is caused by a work related accident or non-work related causes.  And the disability protection laws do not "care" about whether an employee became disabled before coming to work for the employer in question or only after the employee began working for the employer in question. Whether the employee in question became a person with a disability due to a work-related injury or became a person with a disability a day before he made a request for a reasonable accommodation doesn't make any difference to the inquiry.

37.     Mr. Washburn alleges Petro West could have accommodated Mr. Washburn for at least a few days in some temporary or permanent position that already existed doing work that needed to be done.

38.     The facts place the issue of whether Mr. Washburn could have performed the essential functions of a job he held or desired if Petro West had afforded him reasonable accommodations and, therefore, whether he was a qualified individual with a disability, in genuine dispute.  *See Taylor v. Garrett,* 820 F.Supp. 933 (E.D. Pa. 1993), *affirmed without opinion,* 61 F.3d 896 (3rd Cir. 1995), *Nighswander v. Henderson,* 172 F.Supp.2d 951 (N.D. Ohio 2001) ("position in question" for postal service letter carrier with permanent lifting restrictions was modified carrier position not original job, where employee had been working in modified position for quite a length of time and modified position was a real job, not a temporary, make-work job). Such allegations may become disputed and, thus, preclude summary judgment.  *See Valdez v. Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M. 1994) (where employer transferred employee with incapacitated right arm to a light duty job, the issue as to whether employee was a qualified individual with a disability should be determined by evaluating whether employee could perform the essential functions of the light duty job to which the employer transferred the employee, not the job the employee was originally hired to perform).  Thus, Mr. Washburn alleges he was a

11

qualified individual with a disability and could have and should have been accommodated and that Petro West failed to accommodate his disability.

39.    Mr. Washburn alleges Petro West fired Mr. Washburn because he got injured, was invoking his rights under the disability protection laws and was seeking information about workers' compensation coverage and benefits and because he had indicated he was going to file and pursue a workers' compensation claim.

40.    Mr. Washburn alleges that, in taking adverse action against him, Petro West treated Mr. Washburn differently than how it treated other non-disabled employees, including, but not limited to, John Sherwood.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION ON THE BASIS OF DISABILITY — DISPARATE TREATMENT AND FAILURE TO ACCOMMODATE

41.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 40 above as if alleged in full herein.

42.    Mr. Washburn alleges he is a person with a disability in that he has an impairment which is substantially limiting one or mor major life activities, including lifting, carrying, sitting, standing and working.

43.     Mr. Washburn alleges he is a qualified individual with a disability in that he could perform the essential functions of the job he held or desired with or without a reasonable accommodation.

44.     Mr. Washburn alleges that he requested a reasonable accommodation or that Petro West knew or should have known that he needed a reasonable accommodation.

45.     Mr. Washburn alleges Petro West refused, declined or failed to provide him with a reasonable accommodation.

46.     Mr. Washburn also alleges that local management has not treated similarly situated non-disabled employees in as harsh and adverse a manner as it treated Mr. Washburn.  Thus, Mr. Washburn alleges that the circumstances described above constitute violations of the antidiscrimination provisions of the Americans with Disabilities Act.

## SECOND CAUSE OF ACTION
## RETALIATION ON THE BASIS OF DISABILITY AND ENGAGING IN PROTECTED ACTIVITY

47.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 46 above as if alleged in full herein.

48.     Mr. Washburn alleges that, after and because of Mr. Washburn requesting a reasonable accommodation, Petro West took adverse action against him because of his engaging in protected activity.

49.     Mr. Washburn alleges that the circumstances described above constitute violations of the anti-retaliation provisions of the ADA.

**THIRD CAUSE OF ACTION**
**COMMON LAW WRONGFUL TERMINATION**

50.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51.     By seeking information about workers' compensation coverage and benefits, and otherwise seeking to exercise his workers' compensation rights, Mr. Washburn engaged in activity consistent with clear and substantial public policies.

52.     After Mr. Washburn engaged in such protected activity, Petro West took adverse employment action against him by interfering with his efforts to pursue and obtain workers' compensation benefits and by terminating his employment.

53.     Petro West's actions and inactions violate clear and substantial public policies and, thus, its termination of Mr. Washburn constitutes a wrongful termination recognized by the Utah Supreme Court in *Touchard v. La-Z-Boy,* 2006 UT 71, 148 P.3d 945 and *Stone v. M&M Welding Construction, Inc.,* 2013 UT App. 233, 312 P.3d 934 (Utah App. 2013).

14

## DAMAGES

54.     Petro West's actions and inactions, as described above, have caused Mr. Washburn losses, injuries and other damages.

55.     Such actions and omissions have caused Mr. Washburn to experience the loss of wages and other benefits and privileges of his employment with Petro West.

56.     Such violations have also caused Mr. Washburn physical and psychological upset, stress and distress.

57.     Accordingly, Mr. Washburn alleges Petro West is liable to Mr. Washburn for all wages, wage increases and benefits, and other compensation, to which he would have been entitled but for Petro West's violation of Title VII, and the Americans with Disabilities Act, prejudgment interest on those losses, compensatory damages, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further legal and equitable relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Ricky Wayne Washburn hereby prays for the following relief:

15

1.      On his First Cause of Action, for judgment determining that the Defendant violated the non-discrimination provisions of the Americans with Disabilities Act and is, therefore, liable to Mr. Washburn for damages equal to his lost wages, lost employment benefits, and other compensation which was denied or lost to Mr. Washburn as a result of the Defendant's violations of Americans with Disabilities Act;

2.      On his Second Cause of Action, for judgment determining that Defendant violated the anti-retaliation provisions of the ADA and is, therefore, liable to Mr. Washburn for pecuniary and non-pecuniary damages, for compensatory damages for emotional distress, and other harms and injuries;

3.      On his Third Cause of Action, for judgment determining that Defendant wrongfully terminated Mr. Washburn's employment and is, therefore, liable to Mr. Washburn for pecuniary and non-pecuniary damages, for compensatory damages for emotional distress, and other harms and injuries;

4.      For prejudgment interest on his lost wages;

5.      For Mr. Washburn's reasonable attorneys' fees, reasonable expert witness fees, and any other costs of the action;

6.      For post-judgment interest on all amounts awarded to Mr. Washburn herein accruing from the date of judgment to the date of satisfaction of judgment awarded herein; and

7.      For such other and further legal and equitable relief as this Court deems appropriate under the circumstances.

DATED this 7th day of November, 2018.

                  */s/ David J. Holdsworth*
                  David J. Holdsworth
                  *Attorney for Plaintiff*

VERIFICATION

Ricky Wayne Washburn, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

_/s/ Ricky Wayne Washburn_____
Ricky Wayne Washburn

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of November, 2018.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:          RESIDING AT: _____

_____